IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESLEY WADE HUNTER,

    Petitioner,

vs.

JAMES TILTON, ET AL.,

    Respondent.

No. CIV 08-CV-01460 JAM CHS P

FINDINGS AND RECOMMENDATIONS

I.    INTRODUCTION

       Petitioner, Wesley Hunter, is a state prisoner proceeding pro se with a second amended petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. With this petition, Petitioner does not challenge his underlying conviction and sentence. Rather, he challenges the results of a prison disciplinary hearing held on March 7, 2006 in which he was convicted of Distribution of Controlled Substance in an Institution/Facility or Contract Health Facility, in violation of CAL. CODE Regs. tit. 15, §3323(c)(7) (2006) (current version at CAL. CODE Regs. tit. 15, §3323(c)(6) (2010)).

II.    ISSUES

       Petitioner claims that:

       A.    Insufficient evidence supports his prison disciplinary conviction for

1

Distribution of a Controlled Substance in an Institution; and

B. He was not afforded the minimum procedural protections guaranteed by the Due Process Clause during his prison disciplinary proceedings .

Upon careful consideration of the record and the applicable law, it is recommended that this petition for *habeas corpus* relief be denied.

III.   FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2005, the Investigative Services Unit ("ISU") at California State Prison, Los Angeles County (CSP-LAC) received an anonymous note indicating that the occupants of Facility D, Housing Unit 3, Cell 216, Petitioner and his cell mate, Andre Underwood, were in possession of a contraband cellular telephone. Ex. C at 20-22.[1] The anonymous note indicated that Petitioner used the cellular telephone to facilitate drug trafficking activities. *Id*. Upon inspection of Cell 216 and a clothed-body search of its occupants, correctional officers discovered a functioning Virgin Mobile Kyocera cellular telephone tucked into the left sock of Inmate Underwood. *Id*. Based on this finding, ISU confiscated all property within the cell for further investigation. *Id*. Petitioner and Inmate Underwood received medical evaluations and were then re-housed in Administrative Segregation. *Id*. A subsequent search warrant issued to Virgin Mobile revealed Petitioner to be the service subscriber for the cellular telephone. *Id*. at 21. The address of record for the subscription was identical to that of William Eugene Hunter, Petitioner's brother and approved visitor at CSP-LAC, and Katrina Hunter, who was identified by Virgin Mobile as the source of the subscription's payments. *Id*. at 21.

On September 6, 2005, ISU conducted a search of each inmate's confiscated property. *Id*. at 23-28. Amongst Petitioner's property, correctional officers discovered a cellular telephone charger and an envelope containing one hundred dollars in United States currency tucked between the pages of a Bible. *Id*. In addition, correctional officers discovered nine individually packaged

---

[1] All citations to lettered exhibits are to the second amended petition; all citations to numbered exhibits are to respondent's answer.

bindles, all containing a green leafy substance, inside the left front pocket of a pair of grey sweatpants belonging to Petitioner. *Id*. at 16. Both an initial field test and a subsequent laboratory test confirmed that the bindles contained marijuana. *Id*. at 29, 32.

The search of Inmate Underwood's property revealed an eleven page handwritten letter signed by Inmate Underwood. Ex. A at 6. The letter was addressed to a suspected Mafia Crip gang member and contained detailed plans involving Petitioner, Inmate Underwood and the trafficking of controlled substances within California Department of Corrections and Rehabilitation ("CDCR") Institutions, including, *inter alia*, CSP-LAC. *Id*. The letter described "how other Mafia Crip leaders and members, both incarcerated and civilian[,] can and should profit from the sale of narcotics...inside the CDCR and on the streets." *Id*. Moreover, the letter described the plans of "98 Main Street Mafia Crips" leaders "to establish and control" other illegal activities in CSP-LAC, CDCR Institutions, and the greater Los Angeles Area.[2] *Id*. at 7. In addition to the letter, correctional officers discovered two notes. The first note contained the names, addresses, CDC numbers, and last known locations of various Mafia Crips members. *Id*. The second note contained the bylaws of the Mafia Crips and three pay sheets recording money owed to Inmate Underwood. *Id*.

In addition to the above evidence gathered from the cell occupied by Petitioner and Inmate Underwood, a confidential informant admitted to purchasing both marijuana and tar heroin from Inmate Underwood. The informant identified Petitioner as the cellmate of Inmate Underwood. Ex. B at 13.

On November 9, 2005, Petitioner was issued a Rules Violation Report ("RVR") charging him with Distribution of a Controlled Substance in an Institution, in violation of CAL. CODE

---

[2] Inmates in California Correctional Institutions are prohibited from possessing "any matter which contains or concerns...[p]lans for activities which violate the law, [the California Code of Regulations], or local procedures." CAL. CODE Regs. tit. 15, § 3006(c)(6). Because the letter authored by Inmate Underwood detailed "[p]lans for activities which violate the law," the letter itself is contraband. *Id*. The contents of the letter relevant to Petitioner's RVR were summarized and presented to him in a confidential memorandum dated November 9, 2005. Ex. B at 12. Petitioner was provided with as much information as possible "without endangering the safety of the source or the security of the institution." Ex. A at 7; *see* CAL. CODE Regs. tit. 15, § 3321(a)(1)-(2).

3

Regs. tit. 15, § 3323(c)(7). Ex. A. The CDCR also referred the RVR to the District Attorney for prosecution.[3] *Id*. at 4. On November 21, 2005, Petitioner timely received his copies of the RVR and all other relevant documents, including the Serious Rules Violation Report, Continuation of Rules Violation Report, Confidential Information Disclosure Forms from Sources One and Two, and the Crime Incident Report. *Id*. On that same date, Petitioner requested that his disciplinary hearing on the RVR be postponed pending the outcome of the referred prosecution; however, he withdrew this request on March 3, 2006. *Id*.

Petitoner's disciplinary hearing was held on March 7, 2006. The hearing was conducted by the Senior Hearing Officer ("SHO"), who informed Petitioner that he had been charged with Distribution of a Controlled Substance, in violation of CAL. CODE Regs. tit. 15, § 3016(c). *Id*. Petitioner acknowledged understanding both the charge and the evidence being presented against him. *Id*. According to the RVR, Petitioner entered a guilty plea and stated, "It was mine. My cellie (UNDERWOOD, C63387) had no knowledge of the drugs." *Id*. at 5. Though Petitioner was informed, both prior to and during the hearing, of his right to request witnesses to testify in his defense, he chose to call no witnesses. *Id*. The SHO found Petitioner guilty at the conclusion of the hearing. *Id*. The finding of guilt was based on several incident reports filed by correctional officers reciting the above facts, the laboratory results confirming the substance in the nine bindles to be marijuana, and Petitioner's guilty plea. *Id*. at 5-8. Accordingly, Petitioner was assessed a six month loss of "good time" credits, sixty days loss of yard, dayroom and telephone privileges, and one year loss of visiting privileges followed by two years of "no contact" visits. *Id*. at 8; *see* CAL. CODE Regs. tit. 15, § 3315. Petitioner was additionally required to undergo two random drug tests per month for a one year period and to enroll in a substance abuse counseling program. *Id*.; s*ee* CAL. CODE Regs.

---

[3] Indeed, Petitioner was charged with a violation of CAL. PENAL CODE § 4573.6, which prohibits the unauthorized possession of controlled substances in a correctional institution. On September 14, 2006, Petitioner pleaded *nolo contedere* to the charges in the Superior Court of California, Los Angeles County. Ex. H at 49. He was sentenced to a four year period of incarceration in state prison, to run concurrently with the term he is currently serving. *Id*. at 52.

4

tit. 15, § 3315.

Petitioner sought appellate review on the adjudication of his disciplinary hearing with CDCR, arguing that he pleaded guilty solely to possession, not distribution, of the marijuana found in his cell. Ex. D at 37. Consequently, Petitioner requested either that the RVR be dismissed or that the charges in the RVR be reduced from Distribution to Possession of a Controlled Substance. Petitioner further requested that he be interviewed prior to any determination on the merits of his appeal. Petitioner's appeal bypassed the First Level of Review. Ex. F at 40. Petitioner's Second Level Review was denied on June 5, 2006. *Id*. at 41. Petitioner's appeal was denied at the Director's Level on November 7, 2006. Ex. G.

After exhausting his administrative appeals, Petitioner filed a petition for writ of *habeas corpus* in the Kern County Superior Court on April 13, 2007. Ex. 1. The court denied the petition in a reasoned opinion on June 19, 2007, finding that Petitioner had failed "to state a *prima facie* claim for relief under *habeas corpus*." Ex. L. at 68-70. Petitioner next filed petitions in the California Court of Appeal for both the Second and the Fifth Appellate Districts. Ex. L at 71-83. Those petitions were denied August 17, 2007 and May 16, 2008, respectively. *Id*. Both Appellate Districts declined to exercise jurisdiction over Petitioner's claims and, therefore, each court denied his petition several times without prejudice to refile in the alternate Appellate District. Ex. L at 71-83. On May 23, 2008, Petitioner filed a petition for writ of *habeas corpus* in the California Supreme Court. Ex. 6. The petition was summarily denied on June 11, 2008. Ex. L at 84.

On June 25, 2008, Petitioner filed a petition for writ of *habeas corpus* in this Court. The petition was dismissed with leave to amend on November 4, 2008 because it named the improper respondent. (Dist. Ct. Order, Nov. 24, 2008). In addition, the Court noted that one of Petitioner's four claims could be properly pursued only by way of a civil rights claim. *Id*. Petitioner filed an amended petition on November 25, 2008. Once again, however, he failed to name the proper respondent. Consequently, the amended petition was dismissed with leave to amend. (Dist. Ct. Order, Dec. 10, 2008). Petitioner filed the instant second amended petition for writ of *habeas*

*corpus*, incorporating his state court petition, on December 24, 2008. Respondent filed an answer on March 10, 2009. On March 18, 2009, Petitioner filed a traverse to Respondent's answer.

IV.   APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of *habeas corpus* by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although "AEDPA does not require a federal habeas court to adopt any one methodology," *Lockyer v. Andrade*, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, AEDPA establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Provided that the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232 F.3d 1031, 1035 (9th Cir. 2000).

6

Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381). In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64. It is appropriate, however, to examine lower court decisions when determining what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal court may grant a writ of *habeas corpus* only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. It is not necessary for the state court to cite or even to be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, a state court opinion need not contain "a formulary statement" of federal law, though the fair import of its conclusion must be consistent with federal law. *Id*.

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle...but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410. Thus, the focus is on "whether the state court's application of clearly established federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

Finally, the petitioner bears the burden of demonstrating that the state court's decision

was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S. at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

V.   DUE PROCESS IN THE PRISON DISCIPLINARY CONTEXT

Petitioner alleges that his Due Process rights were violated when he was assessed, *inter alia*, a loss of 180 days "good time" credits after being convicted in a prison disciplinary proceeding of distributing a controlled substance in an institution. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV, § 2. Although the Constitution does not guarantee "good time" credits to prison inmates, when a state provides a statutory right to such credits and also "specifies that it is to be forfeited only for serious misbehavior," the prisoner's interest in those credits takes on "real substance" and is "sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557. California has created such a statutory scheme. *See* CAL. CODE REGS tit. 15, § 3043. Consequently, California prison inmates have a statutorily created liberty interest in "good time" credits and require minimum due process procedural protections before those credits may be revoked.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined" and will vary accordingly. *Hewitt v. Helms*, 459 U.S. 460, 472 (1983). Indeed, the Supreme Court has recognized that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff*, 418 U.S. at 555. In identifying the procedural safeguards required in the prison context, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill*, 472 U.S. at 454-55. Thus, the requirements of due process necessarily involve a balancing of inmate

rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. *Wolff*, 418 U.S. at 560-63.

It is well established that inmates subject to disciplinary action, although not guaranteed the "full panoply of rights" afforded to criminal defendants under the Due Process Clause, are still entitled to certain procedural protections. *Id*. at 556-558 (1974); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Specifically, when a disciplinary proceeding may result in the loss of "good time" credits guaranteed under a state statutory scheme, an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 445 U.S. at 454 (citing *Wolff*, 418 U.S. at 563-67); *see also Ponte v. Real*, 471 U.S. 491, 495 (1985). Conversely, a prison disciplinary proceeding does not invoke a constitutional right to counsel, *Wolff*, 418 U.S. at 570, to confront or cross-examine adverse witnesses, *Ponte*, 471 U.S. at 510; *see also Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976), or to the procedural protections applicable to a guilty plea in state and federal criminal trials. *Bostic v. Carlson*, 884 F.2d 1267, 1272 (9th Cir. 1989) (noting the stringent requirements for "ascertaining whether a guilty plea is truly knowing, intelligent and voluntary" in the context of a criminal trial and that the Ninth Circuit has refused to extend those procedural protections to less formal proceedings).

The disposition of a disciplinary hearing must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. This means that a finding of guilt may not be "without support" or "arbitrary." *Id*. at 457. The "some evidence" standard is "minimally stringent" and a decision must be upheld if there any reliable evidence in the record that could support the conclusion reached by the factfinder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (internal citations omitted)). Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of

9

witnesses, or the weighing of evidence." *Hill*, 472 U.S. at 455-56; *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Indeed, "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Id*. at 456 (citing *Wolff*, 418 U.S. at 562-63; *Jackson v. Virginia*, 443 U.S. 307 (1979)).

VI. DISCUSSION

    A.    Some Evidence" Supports the Discipline

Petitioner claims that insufficient evidence was presented during his disciplinary hearing to support his conviction for distribution of a controlled substance in an institution. Thus, Petitioner claims that he may only be convicted for the rule violation of possession of a controlled substance. Respondent, on the other hand, argues that "some evidence" supported the prison disciplinary decision.

On the facts in this case, it is apparent that the evidence relied upon by the SHO to convict Petitioner for the rule violation of distribution in his disciplinary hearing was sufficient to meet the requirements imposed by the Due Process Clause. The RVR clearly shows that the SHO found Petitioner guilty of the charged rule violation based upon: (1) Incident Reports authored by Officers Balandran, Clemons, Gamboa, and Romero detailing, *inter alia*, the discovery of contraband items in Petitioner's cell; (2) laboratory results confirming the green leafy substance discovered in Petitioner's cell to be marijuana; (3) the contents of a letter authored by Inmate Underwood revealing plans involving himself and Petitioner to set up a narcotic trafficking ring within California State Prisons; (4) the statement of a confidential informant who admitted purchasing marijuana and tar heroin from Inmate Underwood and identified Petitioner as Inmate Underwood's cellmate; and (5) Petitioner's guilty plea. Ex. C at 5-8. As discussed above, a federal court considering a Petitioner's *habeas corpus* claim is not required to examine the entire record, independently assess witness credibility or weigh evidence. *Hill*, 472 U.S. at 455-56. The disposition of a disciplinary hearing must be upheld if there is any reliable evidence in the record to support the conclusion reached by

the factfinder.

Moreover, AEDPA establishes a highly deferential standard for evaluation of a state-court ruling. Accordingly, a federal court considering a Petitioner's federal *habeas corpus* petition must review and give deference to the last reasoned state-court decision on the merits of a petitioner's claim. Here, the Kern County Superior Court determined that:

> There is evidence to support the imposition of discipline: the confidential informants, the positive laboratory finding of 2.75 grams of marijuana, the letter from petitioner's cellmate detailing the plan between petitioner and himself to distribute the controlled substances, and the cell phone possession and the records tracing the account to the petitioner. All this evidence was also coupled with the detailed reports by the corrections officers. Petitioner fails to state a prima facie case for relief under habeas corpus.

Although Petitioner claims that his prison disciplinary conviction lacked evidentiary support, he does not dispute the reliability or the factual accuracy of the evidence relied upon in either the final RVR or the Kern County Superior Court opinion. The record in this case contains at least "some evidence" to support the guilty finding of the SHO in Petitioner's prison disciplinary proceeding. In addition, Petitioner has not demonstrated that the decision of the Kern County Superior Court upholding his prison disciplinary conviction was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of facts. Petitioner has, therefore, failed to demonstrate that he is entitled to federal *habeas corpus* relief on this claim.

        B.      Petitioner Received All Process He Was Due

Petitioner claims that he has been denied access to two cassette tapes recorded when the Investigative Services Unit ("ISU") interviewed him on December 23, 2005. Petitioner alleges that these tapes disclose favorable evidence proving that correctional officers knew he did not, in fact, sell any drugs. He further claims that production of the two tapes would demonstrate that he was promised either that the RVR would be dismissed or that the charged rule violation would be reduced to mere possession of a controlled substance.

Petitioner was entitled to and, in fact, was afforded, the minimal procedural

protections detailed in *Hill*. The RVR notes that Petitioner received all relevant documents notifying him of the disciplinary charges against him and the evidence relied upon well in advance of his disciplinary hearing. Ex. A at 4. Indeed, Petitioner acknowledges that he received the RVR for distribution of a controlled substance on November 9, 2005, well in advance of his actual hearing. (Second Am. Pet.). Petitioner was given an opportunity at the hearing to call witnesses, although he declined to do so, and to present documentary evidence in his defense. Ex. A at 5. Finally, Petitioner was provided with a written statement from the SHO detailing the evidence relied upon in reaching the determination of guilt and the reasons for the disciplinary action. *Id.* at 1-11. Petitioner was not constitutionally entitled to the additional requested discovery. *See Keel v. Dovey*, 459 F.Supp.2d 946, 959 (C.D. Cal.2006) (finding that due process was satisfied where prisoner was provided notice of the evidence to be relied upon at the disciplinary hearing and no further discovery need be granted). Petitioner is not entitled to relief on this claim.

        Petitioner additionally claims that the SHO's verbal finding during his prison disciplinary hearing is inconsistent with the final written disposition of his RVR. Although Petitioner acknowledges admitting during the hearing that the marijuana found in his cell belonged to him, he denies ever selling any drugs. According to Petitioner, the SHO found his hearing statements credible and agreed to accept Petitioner's guilty plea for the lesser offense of possession of a controlled substance. Petitioner, therefore, contends that both his guilty plea and conviction for distribution recorded on his RVR were errors that the SHO has since promised him would be corrected. Aside from Petitioner's self-serving statements, there is no evidence to corroborate Petitioner's claim. In fact, the final RVR reflects that Petitioner pleaded guilty to the charged rule violation of distribution of a controlled substance during his disciplinary hearing and that, after considering all of the evidence presented, the SHO found Petitioner guilty of said rule violation. This Court is not permitted to substitute its own judgment for that of the SHO or to conduct an independent determination with regard to the credibility of Petitioner's hearing statements. *Hill*, 472 U.S. at 455-56. Moreover, Petitioner is not constitutionally entitled to a determination of

whether his disciplinary hearing guilty plea was knowing, intelligent and voluntary. *Bostic*, 884 F.2d at 1267. As stated above, Petitioner received all process due under the Fourteenth Amendment and, therefore, is not entitled to relief on this claim.

Finally, Petitioner claims that the California Code of Regulations fails to give adequate warning to inmates regarding what circumstantial evidence may be considered when determining whether a prison inmate is guilty of the rule violation of distribution of a controlled substance, instead of the lesser rule violation of possession. Petitioner argues that, in order to be convicted for distribution of a controlled substance, specific acts of distribution must be documented and proven during his disciplinary hearing. Petitioner is mistaken. CAL. CODE REGS. tit. 15, § 3000 defines the act of distribution as "the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; *or the solicitation of or conspiring with others in arranging for,* the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility *for the purpose of sales or distribution*. (Emphasis added). It is clear that the California Code of Regulations contemplates that soliciting or conspiring with others to distribute controlled substances within an institution, in addition to actual distribution of a controlled substance, will constitute an act of distribution. Petitioner is not entitled to relief on this claim.

VII. CONCLUSION

Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections

Case 2:08-cv-01460-JAM-CHS    Document 16    Filed 05/21/10    Page 14 of 14

within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 20, 2010

<em>/s/ Charlene H. Sorrentino</em>
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE